IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LARRY D. STEWART, | ) | CASE NO.1:01CV1785 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE OLIVER |
| v. | ) | |
| | ) | MAGISTRATE JUDGE HEMANN |
| HARRY RUSSELL, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is Larry D. Stewart's ("Stewart") petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 on July 23, 2001. Stewart is in the custody of the Ohio Department of Corrections pursuant to his guilty plea in *State of Ohio v. Stewart*, Case no. CR-340, 429 (Cuyahoga County 1998). For the reasons set forth below, the magistrate judge recommends that the court deny the petition.

I

The state appellate court reviewing Stewart's conviction and sentence found the following facts to be relevant to his case:

> Appellant's convictions stem from an incident that occurred on the night of May 28, 1996. Since that day was the eighth birthday of Jewetta Roberts, daughter of Nathan Bell,[FN1] one of the victims herein, Nathan had celebrated it with a number of family members at their home, an apartment in a building located at 3395 East 140 th Street in Cleveland, Ohio.

> FN1. For purposes of clarity, the adults who were in the apartment on the night of the incident will be referred to in this opinion by their first names.

Nathan's family members present at the apartment by nightfall included the following: 1) his mother Jewetta; 2) his brother Tyrone, who was a quadriplegic; 3) his brother Kevin, who arrived at the apartment at approximately 9:15 p.m.; and 4) his sons "Little Nate," Jason and Christopher. Also present that night were Nathan's girlfriend Latasha and his friend Mark Turner.

As Nathan was not scheduled to report to his place of employment until midnight, he decided to watch a televised basketball game with Tyrone in Tyrone's bedroom. Mark was also in the room, seated on Tyrone's bed.

Upon his arrival at the apartment, Kevin informed Nathan's sons Little Nate and Jason that on his way he had stopped to order a sandwich from the restaurant located next door to the apartment building. Kevin asked the boys to retrieve it for him, and they agreed. He gave them some money, then proceeded to Tyrone's room to join his brothers and Mark.

Outside the apartment, Little Nate and his brother went down the few steps to the security door in the lobby of the building. Little Nate was opening the security door when he saw Curtis Mitchell approaching. Since Little Nate knew Curtis was a relative of the family,[FN2] he held the security door open to let Curtis inside the building. The youngsters then continued on their errand.

> FN2. Nathan testified at appellant's trial that Curtis was his older brother Timothy's stepson. Timothy, who lived in Akron, Ohio, was not present at the apartment on the night of the incident.

Curtis entered the apartment through the unlocked front door, walking past the dining room at the front and into the short hallway, where he stopped and looked into Tyrone's bedroom. Curtis greeted the men inside, then proceeded to the other bedroom in the apartment, where Jewetta was watching her two other grandchildren as they played video games on the television. Curtis did not visit often; therefore, Jewetta thought his appearance that night was unusual. Curtis spoke with Jewetta briefly. As he was doing so, Latasha stepped into the dining room to begin ironing clothes; thus, she saw Curtis "standing in the hallway," [FN3] and he passed her on his way out of the apartment.

FN3. Quotes indicate testimony of a witness at appellant's trial.

The two youngsters were returning from their errand just as Curtis was exiting the building. Before Little Nate went into his family's apartment, he observed Curtis

"[p]utting paper in the [security] door" in order to prevent it from latching.

Little Nate then delivered the restaurant sandwich to Kevin, who took it into his mother's bedroom to eat it. By this time, Little Nate had become hungry himself, so he made a sandwich in the kitchen. Afterwards, he and Jason sat in the dining room to wait for Latasha to finish ironing clothes.

The three of them were surprised when the door to the apartment suddenly opened, striking Latasha as it did so. Two strange men strode into the entranceway; the men both held guns. One man, later identified as William Logan, continued down the hall, while the other, later identified as appellant, ordered Latasha and the two boys to "get down."

As Latasha obeyed, she watched appellant, concerned that he would fire the weapon he pointed at her. Appellant stated, "Don't look," so Latasha then covered her eyes with her arm.

Logan walked past the first bedroom and entered Jewetta's bedroom, where Kevin had just set down the remaining portion of his sandwich. Kevin looked up to see Logan "standing in front of me with a loaded 38-caliber handgun in my face." Logan demanded money. Kevin complied by handing Logan his wallet; however, since he knew it contained no currency, he began to plead with Logan to "let [his] mom out of this house."

In her fear at the sudden confrontation, Jewetta fumbled for her purse, declaring she would take Logan "to the ATM machine" because they had "no money here." Logan seemed disconcerted by this information. He ordered them to "[s]hut up" and motioned for them to leave the room.

Kevin pushed his mother in front of him as the two were followed out the door by Logan. As Kevin passed the other bedroom, he nudged the door open with his foot in order to apprise the men inside of what was occurring. Thus, Nathan, who had been watching television from a prone position on the floor of the bedroom, looked over at the doorway to see "a guy with a gun to [his] brother's head." Jewetta continued to the dining room, where upon seeing appellant, she lay down on the floor with the others.

Nathan leaped up and advanced toward the men. Logan turned the gun toward him, but at that moment, Kevin also turned toward Logan. The brothers "grabbed" at Logan's gun hand and pushed it toward the wall behind them. A struggle between the three ensued. Logan's gun fired during the fight for it; the bullet struck the rear door of the apartment.

When appellant became aware of his partner's difficulty, he left the dining room to run down the hallway in a "crouched" position with his gun extended and "pointed."

3

Just as appellant advanced, Mark Turner came to the bedroom doorway intending to aid his friends in their struggle for Logan's gun. Appellant fired his weapon once; Mark said, "Oh," then "fell back" onto the bedroom floor. The bullet had struck him in the back and traveled through his heart, killing him almost instantly.

Appellant then fired his weapon again, striking Nathan in the leg and shattering the femur. Nathan "went down." Appellant stepped over Nathan, pointed the gun at each of the brothers, and ordered Kevin to "[g]et off [his] boy [Logan]." Kevin complied. The two gunmen then fled out the rear door.

By this time, Latasha and Jewetta also had escaped from the apartment. They summoned the police, who arrived within minutes. Nathan soon was transported to the hospital by emergency medical personnel. During their investigation of the incident, the police took photographs of the scene and interviewed the witnesses present.

Shortly after the incident had occurred, police officer Michael Belle received a telephone call from his cousin, Ernestine Bell, Jewetta's daughter. Belle's cousin informed him of what had transpired that evening. He proceeded to the apartment, spoke with Jewetta, then "went to look for Curtis Mitchell." Upon finding him, Belle convinced Curtis to accompany him to the Cleveland Police Department's Homicide Unit.

Curtis thereafter gave a written statement that identified Logan and appellant by their "street names" as his partners in perpetrating the incident. Logan was arrested within approximately two weeks; however, the police were unable to apprehend appellant.

On June 27, 1996, the Cuyahoga County Grand Jury issued an indictment against appellant and Logan, charging them on seven counts as follows: two counts of aggravated murder, R.C. 2903.01(A) and (B), with firearm, mass murder and felony murder specifications; one count of attempted murder, R.C. 2923.02/2903.02, with a firearm specification; two counts of aggravated robbery, R.C. 2911.01, with firearm specifications; and two counts of kidnapping, R.C. 2905.01, with firearm specifications. Appellant and Logan also each were indicted on a single count of having a weapon while under disability, R.C. 2923.13; appellant's count contained both a firearm and a violence specification. The record reflects William Logan's case proceeded separately from appellant's.

On September 2, 1996, appellant was arrested in Tacoma, Washington. Appellant waived extradition and was arraigned on September 24, 1996. He entered a plea of not guilty to the charges and was assigned counsel to represent him.

On October 14, 1996, Det. Moore, who was in charge of the investigation of the incident, went to the Bells' apartment with a photographic array consisting of twelve

4

pictures.[FN4] Asking each to choose those persons who "came into the house that night," Det. Moore showed the array separately to the following people: Latasha, Jewetta, Nathan, Tyrone and Kevin. Latasha, Jewetta and Nathan all chose the photographs of Curtis, Logan and appellant from the array. Tyrone chose Curtis and Logan. Kevin also chose Curtis and Logan; his identification of appellant, however, was not immediate and, therefore, Moore did not note it.

FN4. Moore testified the reason for the delay in approaching the witnesses with the photographic array was due to "time schedules, the [other] homicides we had to investigate, court appearances; the family was * * * unavailable. Various things * * *."

The record reflects that on April 7, 1997, after extensive discovery had been undertaken and appellant's case was called for trial, appellant informed the trial court he was dissatisfied with counsel. The trial court discussed the matter and permitted appellant's family to retain additional counsel but advised appellant that it would not permit assigned counsel simply to be dismissed; rather, they would assist retained counsel. Appellant raised no objection to this proposal.

Also prior to trial, the state requested a dismissal of count one of the indictment against appellant. The trial court granted the motion and consequently renumbered the counts of the indictment against appellant. Subsequently, the trial court also granted appellant's motion to try the final count of the indictment to the bench.

Although appellant requested the trial court to conduct a separate voir dire hearing on identification testimony of the state's witnesses prior to the commencement of trial, the trial court refused. The trial court stated its belief that, in view of the probable length of the trial, judicial economy would be better served by conducting a voir dire prior to the testimony of each identification witness.

Appellant's jury trial commenced on June 9, 1997. During its case-in-chief, the state presented the testimony of several members of the Bell family, some of the investigating police officers and forensics examiners, the assistant county coroner who had conducted Mark Turner's autopsy, and Curtis Mitchell. The state also introduced into evidence, *inter alia*, several photographs of the scene taken by the police on the night of the incident. The trial court further permitted the state to introduce evidence concerning appellant's prior convictions.

Appellant presented the testimony of several witnesses and also testified in his own behalf. Appellant's defense was that of alibi: he stated he was with Nicole Garrett, the mother of two of his children, on the night of the incident. The trial court thereafter admitted appellant's work records for the relevant time period into evidence.

5

On June 13, 1997, the jury found appellant guilty on all counts with the specifications. Additionally, the trial court found appellant guilty of the remaining count of having a weapon while under disability.

A mitigation hearing as to appellant's conviction for aggravated murder, R.C. 2903.01(B), followed on September 3, 1997. At the mitigation hearing, appellant's parents testified concerning appellant's upbringing. Appellant then gave an unsworn statement. Subsequently, the jury recommended a sentence of life imprisonment without parole eligibility for thirty years.

On September 4, 1997, the trial court sentenced appellant to consecutive terms of incarceration as follows: three years on the firearm specifications, to be served prior to and consecutive with thirty years to life for the aggravated murder conviction; fifteen to twenty-five years for the convictions for attempted murder and each of the convictions for aggravated robbery and kidnapping; and three to five years for the conviction for having a weapon while under disability.

*State v. Stewart*, 1998 WL 811313 (Ohio App. Nov. 19, 1998). Judgment and sentence were entered against Stewart on September 30, 1997.

Stewart filed a timely notice of appeal of his convictions in the state appellate court. He raised four assignments of error in his appeal:

I.  THE TRIAL COURT ERRED IN ADMITTING PATENTLY UNRELIABLE EYEWITNESS IDENTIFICATIONS.

II.  FAILURE OF THE TRIAL COURT TO GIVE A REQUESTED JURY INSTRUCTION ON VOLUNTARY MANSLAUGHTER DENIED THE APPELLANT IS [sic] RIGHT TO FAIR TRIAL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENT [sic] OF THE UNITED STATES CONSTITUTION.

III.  THE APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE FAILURE OF DEFENSE COUNSEL TO MOUNT AN EFFECTIVE MITIGATION.

IV. THE CONVICTIONS ARE AGAINST THE WEIGHT OF THE EVIDENCE.

Stewart later supplemented his appellate brief by adding four additional assignments of error:

6

### ASSIGNMENT OF ERROR I.

The trial court abused it's discretion in denying the appellants motion  for mistrial and suppression of State witness Kevin Bell, <u>a violation of the Sixth and fourteenth amendment of the United States Constitution.</u>

### ASSIGNMENT OF ERROR II.

The trial court erred when refuseing the defense from useing the States crime scene photo-graphs for cross examination of identification witnesses, <u>a violation of the fifth and fourteenth amedment of the United States Constitution.</u>

### ASSIGNMENT OF ERROR III.

The trial court erred in entering Judgements of conviction for aggravated-murder, 2-counts of aggravated  robbery and 2-counts of aggravated kidnapping, which under the circumstances are allied offenses of similar import,   <u>a violation of the multiple count Status, Ohio Revised Code. § 2941.25.</u>

### ASSIGNMENT OF ERROR IV.

The trial court failed to give cautionary instructions on eye-witness testimony, which amounted to plain-error, <u>a violation of the fifth and fourteenth amendment of the Uniterd States Constitution.</u>

(Errors in the original.)  On November 30, 1998 the state appellate court affirmed the

judgment of the trial court.

Stewart did not file a timely notice of appeal in the Ohio Supreme Court.  On March

20, 2000 he filed a motion for leave to file a delayed appeal pursuant to Ohio S. Ct. R. II,

§ 2(A)(4).  The Ohio Supreme Court denied his motion on July 12, 2000.

On March 10, 1999 Stewart filed in the state appellate court an untimely application

for a delayed appeal pursuant to Ohio App. R. 26(B).  Stewart asserted five claims in his

application:

    I.      APPELLANT WAS DENIED EFFECTIVE ASSISTANCE ON DIRECT APPEAL.

    II.     PROSECUTION KNOWLING USED PERJURED TESTIMONY.

7

III.     DEFENDANT WAS DENIED HIS SUBSTANTIAL RIGHT WHEN THE COURT PROCEEDED TO EXCUSE A JUROR AFTER JURY HAD BEEN IMPANLED IN WHICH WAS DONE WITH-OUT ANY QUESTIONING OF JUROR AFFECTED.

IV.     DEFENDANT WAS DENIED HIS SUBSTANTIAL RIGHT TO BE PRESENT AT THE HEARING CONCERNING EXCUSEING A JUROR.

V.     PROSECUTOR'S IMPROPER COMMENTS DURING REBUTTAL ARGUEMENTS WAS OF PLAIN-ERROR.

(Errors in the original.)  On June 29, 1999 the court denied Stewart's application on the

grounds that it was untimely.  The court also found Stewart's claims barred by

*res judicata*.

Stewart filed a notice of appeal in the Ohio Supreme Court on July 28, 1999.  In his

memorandum in support of jurisdiction, Stewart asserted five propositions of law:

PROPOSITION OF LAW NO: I

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN HID DIRECT APPEAL, A VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW NO: II

THE PROSECUTION KNOWLING USED PERJURED TESTIMONY WHICH, DENIED APPELLANT OF DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW NO: III

APPELLANT WAS DENIED HIS RIGHT WHEN THE COURT PROCEEDED TO EXCUSE A JUROR AFTER THE JUROR HAD BEEN IMPANELED IN WHICH WAS DONE WITH_OUT ANY QUESTIONING AFFECTED, IN VIOLATION OF DUE PROCESS GUARANTEED BY THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW NO: IV

APPELLANT WAS DENIED HIS SUBSTANTIAL RIGHT TO BE PRESENT AT THE HEARING CONCERNING THE EXCUSING OF A JUROR, IN WHICH VIOLATED DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH

8

AMENDMENT TO THE UNITED STATES CONSTITUTION.

PROPOSITION OF LAW NO: V

PROSECUTOR'S IMPROPER COMMENTS DURING REBUTTAL ARGUEMENTS WAS OF PLAIN-ERROR DEPRIVING APPELLANT OF HIS RIGHT TO A FAIR TRIAL UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

(Errors in the original; emphasis altered from the original.)  On September 29, 1999 the Ohio Supreme Court dismissed Stewart's appeal as not involving any substantial constitutional question.

On June 8, 1998, Stewart filed in the trial court a petition for postconviction relief pursuant to Ohio Rev. Code § 2953.21.  Stewart asserted three assignments of error in his petition:

I.     Petitioner was denied effective assistance of counsel, where the omission of counsel to recognize and object to the amended chargeing terms of the indictment.

II.    The trial court abused it's discretion for allowing the petitioner to be held to answer and convicted of fact's not found by a grand jury.

III.   Prosecutorial Misconduct:  prosecution knowling presented it's case with a material false impression and utilized perjured testimony.

(Errors in the original.)  On July 20, 1998 the trial court dismissed the petition without opinion.  Stewart filed on August 27, 1998 a motion for summary judgment and to supplement the appendix to his petition.

On December 22, 1998 Stewart filed in the appellate court a brief appealing the trial court's dismissal of his petition for postconviction relief.  The court dismissed his appeal for lack of jurisdiction.  The court noted that the trial court had not issued findings of fact and conclusions of law.  The court found, therefore, that because a final, appealable order

was not before the court, and the matter was not yet ripe for appeal. On March 10, 1999 the trial court issued findings of fact and conclusions of law related to its dismissal of Stewart's petition. The trial court found that all of Stewart's assignments of error were barred by *res judicata*.

On April 20, 1999 Stewart filed a second appeal of the denial of his petition for postconviction relief. Stewart asserted five assignments of error in his appeal:

I. THE TRIAL COURT LACKED SUBJECT MATTER JURISDICTION TO AMEND THE INDICTMENT, DENYING APPELLANT OF DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

II. THE TRIAL COURT ABUSED IT'S DISCETION IN ALLOWING APPELLANT TO BE HELD TO ANSWER AND CONVICTED BY FACTS NOT FOUND BY A GRANDJURY, PURSUANT TO CRIM(R) (7)(D), DENYING APPELLANT OF DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

III. APPELLANT WAS DENIED INEFFECTIVE ASSISTANCE OF COUNSEL'S IN THEIR FAILURE TO RECOGNIZE AND OBJECT TO THE AMENDMENT DENYING APPELLANT OF HIS RIGHTS TO THE SIXTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

IV. THE TRIAL COURT ERRED IN DENYING APPELLANT AN EVIDENTIARY HEARING, DEPRIVEING HIM OF DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSITUTION.

V. THE TRIAL COURT ERRED IN ADOPTING VERBATIM THE STATES MEMORANDUM CONTRA, DENYING APPELLANT OF DUE PROCESS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

(Errors in the original.) On June 26, 2000 the state appellate court affirmed the judgment of the trial court. The court found all of Stewart's assignments of error to be without merit and also found that the first two assignments of error were barred by *res judicata*.

On August 21, 2000 Stewart filed in the state appellate court a motion for relief from

10

judgment pursuant to Ohio R. Civ. P. 60(A). The state appellate court dismissed his motion without opinion on September 12, 2000.

On April 18, 2001 Stewart filed in the trial court a second petition for postconviction relief. The trial court dismissed this petition without opinion on August 16, 2001.

On October 2, 2001 Stewart filed a second application to reopen his direct appeal pursuant to Ohio App. R. 26(B). On November 2, 2001 the court of appeals denied his application, noting that there is no right to file a successive application to reopen an appeal.

On July 23, 2001 Stewart filed in federal court a petition for a federal writ of habeas corpus. The court dismissed Stewart's petition as barred by the statute of limitations on August 8, 2002. Stewart appealed this dismissal to the Sixth Circuit Court of Appeals. On February 17, 2004 the Sixth Circuit vacated the judgment of the District Court and remanded the matter for further consideration. Stewart amended his petition on February 10, 2005 to assert twelve grounds for relief:

> GROUND ONE: Petitioner was denied due process by the admission at trial of unreliable eyewitness identifications.
>
> GROUND TWO: The Court's denial of Petitioner's motion for mis trial deprived him of due process.
>
> GROUND THREE: The trial Court denied Petitioner due process by refusing the defense from using crime scene photos to cross examine key witnesses.
>
> GROUND FOUR: The Trial Court's failure to give cautionary instructions regarding ere witness testimony deprived Petitioner of due process.
>
> GROUND FIVE: The Trial Court's failure to give requested instruction on voluntary manslaughter denied petitioner of due process.

11

GROUND SIX:        Petitioner's multiple punishments for aggravated murder, aggravated robbery and kidnapping in violation of O.R.C. § 2945.25 and the Double Jeopardy Clause.

GROUND SEVEN:        Petitioner was denied effective assistance of appellate counsel.

GROUND EIGHT:        Prosecutions knowing use of perjured testimony denied Petitioner of due process.

GROUND NINE:        The Trial Court lacked subject matter jurisdiction to amend the indictment denied Petitioner due process.

GROUND TEN:        Petitioner was denied due process by being held to anser and convicted of facts not found by a grand jury in contrvention to Ohio Crim. R. (7)(D).

GROUND ELEVEN:        The prosecution violated petitioner's due process rights to a fair trial by with holding exculpatory evidence that discredits eye witnesses identification testimony.

GROUND TWELVE:        Prosecutions knowing use of perjured testimony deprived petitioner of his due process rights to a fair trial.

(Errors in the original.) On July 17, 2006 Stewart again amended his petition.  Stewart now asserts four grounds for relief:

**GROUND ONE:**    PETITIONER STEWART WAS DENIED HIS DUE PROCESS RIGHTS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY THE ADMISSION AT TRIAL OF UNRELIABLE EYE-WITNESS IDENTIFICATION TESTIMONY.

**GROUND TWO:**    PETITIONER STEWART WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

**GROUND THREE:**    THE PROSECUTION VIOLATED PETITIONER STEWART'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS BY WITHHOLDING EXCULPATORY EVIDENCE THAT WOULD HAVE DISCREDITED EYE WITNESS IDENTIFICATION TESTIMONY.

**GROUND FOUR:** THE PROSECUTION VIOLATED PETITIONER STEWART'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS BY KNOWINGLY USING PERJURED TESTIMONY TO SECURE PETITIONER STEWART'S CONVICTION.

Respondent has filed an Answer/Return of Writ (Docket #12), a Supplemental Answer/Return of Writ (Docket #50), and a Response to Petitioner's Reply (Docket #76). Petitioner has filed a Reply (Docket #18) to the initial Answer/Return of Writ, a Traverse (Docket #55), a Response Brief (Docket #56), a Reply to the Supplemental Answer/Return of Writ (Docket #74), and a Reply to respondent's Response Brief (Docket #78). Thus, the petition is ready for decision.

II

A.    *Jurisdiction*

Stewart is in the custody of Lebanon Correctional Institution in Lebanon, Ohio and was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio. Stewart filed his petition in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254:

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a state court of a state which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the state court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a)&(d).  This court has jurisdiction over Stewart's petition.

B.    *Evidentiary Hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in

13

state court proceedings or when the state proceedings were seriously defective or inadequately recorded.  *See* 28 U.S.C. § 2254(d).  There is no need for an evidentiary hearing in the instant case.  All Stewart's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of State Remedies*

A state prisoner must have no remaining state remedies prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Riggins v. Macklin,* 936 F.2d 790, 793 (6th Cir. 1991).  The prisoner must fairly present any claims to the state in a constitutional context. *Anderson v. Harless,* 489 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270 (1971); *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir. 1989).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.  *Manning v. Alexander,* 912 F.2d 878, 881-83 (6th Cir. 1990).

Stewart has no remaining state remedies for his claims.  Thus, Stewart has exhausted his state remedies.

D.    *Procedural default*

Procedural default occurs when a petitioner fails to present fairly a constitutional claim to the highest state court in a federal constitutional context.  *Anderson,* 489 U.S. 4; *Picard,* 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."

14

*Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must

conduct a four-step analysis to determine whether the petitioner has indeed defaulted and,

if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if

petitioner demonstrates that not excusing the default "will result in a fundamental

miscarriage of justice."  *Coleman,* 501 U.S. at 750.

Respondent contends that Stewart has procedurally defaulted all his grounds for

relief.  Stewart responds that he has not defaulted grounds one and two and has shown

cause and prejudice for the failure properly to exhaust grounds three and four.

### 1.     Procedural default and Stewart's first ground for relief

In his first ground for relief Stewart argues that he was denied due process by the

15

admission at trial of unreliable eyewitness identification testimony. This claim was first raised in the state appellate court on direct appeal. When the state appellate court denied Stewart relief, he failed timely to perfect his appeal of that decision to the Ohio Supreme Court. Stewart later filed a motion for leave to file a delayed appeal pursuant to Ohio S. Ct. R. II, § 2(A)(4), and the Ohio Supreme Court denied his motion. Stewart contends that the motion for leave to file a delayed appeal fairly presented this claim to the Ohio Supreme Court.

The requirement in Ohio S. Ct. Prac. R. II, § 2(A) that appellants file a notice of appeal in the Ohio Supreme Court within 45 days of the entry of judgment is an adequate and independent state ground on which Ohio may rely to foreclose habeas relief. *Smith v. Ohio Dept. of Rehab. & Corr.*, 463 F.3d 426, 431-32, 432 n.3 (6th Cir. 2007). A motion for leave to file a delayed appeal is a procedural motion that does not raise an appellant's claims in the Ohio Supreme Court, and a judgment denying that motion is a purely procedural judgment, not a judgment on the merits. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Thus, appellants who fail to perfect an appeal within 45 days of entry of judgment in the state appellate court, move for a delayed appeal in the Ohio Supreme Court, and are denied relief have procedurally defaulted their claims. *Bonilla*, 370 F.3d at 496-97. Stewart has, therefore, procedurally defaulted his first ground for relief.

Stewart argues that Ohio S. Ct. R. II, § 2(A)(4) gives the Ohio Supreme Court unbounded discretion to determine what constitutes adequate reasons for the appellant's delay in filing his appeal and that, therefore, it is not an adequate and independent ground upon which Ohio may rely to foreclose habeas review. Stewart analogizes to Ohio App. R. 5(A), which has been found not to be an adequate and independent ground to foreclose

16

habeas review for similar reasons.  *See Deitz v. Money*, 391 F.3d 804 (6th Cir. 2004).

*Bonilla* necessarily implies, however, that Ohio S. Ct. R. II, § 2(A)(4) *is* an adequate and independent ground to foreclose review.  The burden is on Stewart to show that this was not true in 2000 when the Ohio Supreme Court denied his motion for leave to appeal. While an analogy to Ohio App. R. 5(A) has some force, Stewart must show that a change in Ohio S. Ct. R. II, § 2(A)(4) or show that a change in how the Ohio Supreme Court applies the rule explains why the rule was not an adequate and independent ground in 2000, *contra* the Sixth Circuit's ruling in 2004.  Stewart makes no such showing.  Having failed to provide some reason why the Sixth Circuit's implicit determination that Ohio S. Ct. R. II, § 2(A)(4) is an adequate and independent ground in 2004 should not lead this court to conclude that the rule was also an adequate and independent ground in 2000, Stewart's argument must fail.

For the above reasons the magistrate judge recommends that the court dismiss Stewart's first ground for relief.

### 2.  *Procedural default and Stewart's second ground for relief*

In his second ground for relief Stewart argues that he was denied effective assistance of appellate counsel.  Stewart first raised this claim in an untimely application to reopen his direct appeal pursuant to Ohio App. R. 26(B).  The state appellate court denied his application as untimely.  Stewart timely perfected an appeal of this decision to the Ohio Supreme Court, which denied his appeal as not involving any substantial constitutional question.  Stewart asserts that his timely appeal to the Ohio Supreme Court fairly presented his second ground for relief to the court.

The Ohio Supreme Court's dismissal of an appeal as not involving any substantial

17

constitutional question is a formulary dismissal and is not an indication that the court

reviewed the merits of the question presented. As the Sixth Circuit has found:

> [M]any formulary orders are not meant to convey *anything* as to the reason for the decision. Attributing a reason is therefore both difficult and artificial. We think that the attribution necessary for federal habeas purposes can be facilitated, and sound results more often assured, by applying the following presumption: Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman,* 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place. Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

*Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991).

In the instant case, Stewart's appeal to the Ohio Supreme Court was dismissed with

the formulary entry that the appeal did not present a substantial constitutional question.

In accordance with *Ylst*, this court looks through that dismissal to the last reasoned opinion

on the subject by the state appellate court. That court dismissed Stewart's claim for failure

to assert it timely. This court must presume, therefore, that the Ohio Supreme Court

dismissed Stewart's claim on procedural grounds rather than on the merits of the case.

Consequently, Stewart did not fairly present this claim to the highest court in the state. He

has procedurally defaulted the claim.[1]

For the reasons given above the magistrate judge recommends that the court

---

[1] Stewart's assertion that his appeal was an appeal of right because it was a capital case for which he *could* have received the death penalty is an interesting exercise in statutory interpretation. The interpretive rule in *Ylst*, however, makes it unavailing. This court must conclude that the Ohio Supreme Court dismissed Stewart's appeal for procedural reasons.

dismiss Stewart's second ground for relief as procedurally defaulted.

### 3.   Procedural default and Stewart's third and fourth grounds for relief

In his third and fourth grounds for relief Stewart argues that the prosecution violated his right to due process by withholding exculpatory evidence that would have discredited eye witness identification testimony used by the prosecution and by knowingly using perjured testimony to secure Stewart's conviction.   Respondent asserts that Stewart defaulted these grounds for relief by failing to raise them timely in a motion for postconviction relief and by failing to raise them in the state appellate court and Ohio Supreme Court.   Stewart concedes that he has procedurally defaulted these grounds for failing to raise them in the state appellate court and in the Ohio Supreme Court, but he contends that he is able to show cause and prejudice for this default because the trial court failed to issue findings of fact and conclusions of law when it dismissed his second petition for postconviction relief.

Stewart maintains that he first presented his third and fourth grounds for relief in his second petition for postconviction relief.   Stewart filed this petition on April 20, 1999.   Ohio Rev. Code § 2923.21(A)(2) requires that petitions for postconviction relief shall be filed no later than 180 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction.   The record contains no indication of when the trial transcript was filed in the state court of appeals during Stewart's direct appeal.   The parties concede, however, that Stewart filed a timely direct appeal of his conviction and sentence.   The trial court entered judgment and sentence against Stewart on September 30, 1997.   Stewart had 30 days to file a timely notice of appeal.   App. R. 4(A).   Thus, Stewart filed his notice of appeal on or before October 30, 1997.   Ohio

requires that the trial record be filed with the appellate court within 40 days of appellant's filing of a notice of appeal. Ohio App. R. 10(A). The trial transcript was filed in the appellate court, therefore, on or before December 8, 1997. Stewart filed his brief in support of his appeal on February 27, 1998. The state appellate court announced its decision on November 19, 1998 and entered judgment affirming the trial court on November 30, 1998. Thus, more than 180 days passed *from the state appellate court's announcement of its decision* until Stewart filed his second petition for postconviction relief. It is clear, therefore, that Stewart defaulted his third and fourth grounds for relief because his petition was untimely.

Ohio law does not require a trial court to issue findings of fact and conclusions of law when it dismisses an untimely petition. *See State v. Beaver*, 131 Ohio App. 3d 458, 463-64, 722 N.E.2d 1046, 1049-50 (1998). When a state court is silent as to the reasons for its decision and there is an applicable procedural bar to the court's reaching the merits of the case, "we will not assume that the court did not observe the applicable procedural bar. Instead, we will assume that had the state court addressed petitioner's . . . claim, it would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). This court must assume, therefore, that the trial court dismissed Stewart's second petition as untimely.

Stewart's argument that he should be excused for failing to appeal the dismissal to the state appellate court because the trial court failed to issue findings of fact and conclusions of law misses the point. Stewart's claims were procedurally defaulted even before he filed his second petition for postconviction relief. The trial court's refusal to issue findings of fact and conclusions of law occurred well after Stewart's procedural default and

20

cannot serve as cause for that default.

Stewart has procedurally defaulted his third and fourth grounds for relief.  He does not argue that the requirement that a petitioner file a petition for postconviction relief within 180 days of the filing of the trial transcript in the state appellate court on direct appeal is not an adequate and independent state ground to foreclose habeas review, nor does he demonstrate cause and prejudice for his default.  For these reasons the magistrate judge recommends that the court dismiss Stewart's third and fourth grounds for relief.

IV.

For the reasons given above the magistrate judge recommends that the court dismiss Stewart's petition.


Date:  February 1, 2007          /s/ Patricia A. Hemann
                                 Patricia A. Hemann
                                 United States Magistrate Judge


## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).